**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000062
29-MAY-2013
08:22 AM**

NO. CAAP-12-0000062

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JERMAINE MADELA, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 10-1-0745)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Ginoza, JJ.)


Defendant-Appellant Jermaine Madela (Defendant) was charged by indictment with two counts of first-degree terroristic threatening, in violation of Hawaii Revised Statutes (HRS) § 707-716(1)(e) (Supp. 2012).[1/] The alleged victim in Count I

---

[1/] HRS § 707-716(1)(e) provides:

> (1)   A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
>
> . . .
>
> (e)   With the use of a dangerous instrument[.]

At the time relevant to this case, HRS § 707-715 (1993), in turn, defined terroristc threatening, in pertinent part, as follows:

> A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony:
>
> (1)   With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

was the Defendant's brother, Jasfer Madela (Jasfer), and the alleged victim in Count II was Defendant's father, Felix Madela (Felix). After a jury trial, Defendant was found guilty of Count I and acquitted of Count II. He was sentenced by the Circuit Court of the First Circuit (Circuit Court)[2/] to imprisonment for five years. Defendant appeals from the "Judgment of Conviction and Sentence" (Judgment) entered by the Circuit Court on January 24, 2012.

On appeal, Defendant argues: (1) there was insufficient evidence to disprove his claim of self-defense; and (2) the prosecutor's comments during closing argument, to which he did not object, constituted prosecutorial misconduct that warrants a new trial. We affirm the Circuit Court's Judgment.

BACKGROUND

I.

Plaintiff-Appellee State of Hawai'i (State) presented the following evidence at trial. Defendant resided together with his father, Felix, who was seventy-six years old, and Defendant's brother, Jasfer. Jasfer testified that on the day in question, he heard Defendant swearing and yelling at Felix, saying "I like money. Fuck you." Apparently, Felix had purchased plane tickets for he and Defendant to travel to the Philippines that day, but at the last minute, Defendant refused to go, resulting in the trip being cancelled and "wasting the family's money." Defendant was yelling at Felix because Defendant wanted Felix to give him the money from the cancelled trip so that Defendant could travel to the mainland.

Jasfer intervened and asked Defendant, "Why you yelling at dad like that for?" Jasfer further told Defendant to stop being disrespectful to their father. Defendant responded by telling Jasfer, "fuck you" and to "shut up." Defendant "went rush [Jasfer]," grabbed Jasfer with both hands by the throat, and pushed Jasfer backwards, causing him to fall and cut his leg on a

_____

[2/] The Honorable Michael D. Wilson presided.

table.   In response, Jasfer punched Defendant twice in his left arm and shoulder.

Defendant ran into the house and grabbed two knives and a machete.  Defendant swung the machete at Jasfer from a few feet away, and Defendant threatened to kill both Jasfer and Felix. Meanwhile, Felix grabbed Defendant around the stomach from behind in an attempt to restrain Felix.  While this was occurring, Defendant threatened to "chop" off the heads of his brother and father.  Felix told Jasfer to go into the house and yelled for the landlord, Edison Amodo (Amodo), to call the police.

Amodo testified that he responded to Felix's calls for help.  Amodo saw Defendant holding a machete and pointing it at Felix.  Amodo heard Defendant say to Felix, "I will kill you if you don't give me the money."  Amodo left to get his cell phone and call the police.  When he returned, Amodo saw Felix on the ground between his two sons.  Jasfer was holding a hammer, with one hand on each end, in order to block the machete that Defendant was holding.  Defendant threatened to chop off the heads of both his father and brother, and it appeared to Amodo that Jasfer was attempting to defend his father.

II.

Defendant testified in his own defense at trial. According to Defendant, he was in the outside kitchen using a small knife to cut vegetables and spam for saimin.  Defendant and his father were having a loud discussion about not getting a refund for airline tickets for a trip to the Philippines.  The trip was cancelled when two hours before the scheduled departure, Defendant told Felix that Defendant refused to go.  Defendant testified that Jasfer came out of the house and confronted Defendant in the mistaken belief that Defendant was asking their father for money.  Defendant swore at Jasfer and told him to stay out of it.  Jasfer wanted to fight and "came to throw a punch" at Defendant.  Defendant pushed Jasfer.  Jasfer then picked up a hammer and Defendant grabbed a knife to protect himself.  Jasfer hit Defendant "once on the left shoulder" with the hammer.  Felix

stepped between the two brothers and told Jasfer to go into the house and Defendant to put the knife down. At some point, Felix took the knife away from Defendant and Jasfer put the hammer down. However, the brothers went at it again, with Jasfer punching Defendant in the body and Defendant attempting to hit Jasfer before Felix was able to break them up.

Defendant asserted that Amodo was never present at the scene to observe the altercation. Defendant also denied threatening either his father or brother with a knife, and Defendant testified that he only picked up the knife to defend himself after Jasfer picked up the hammer.[3]

DISCUSSION

I.

Defendant argues that his conviction must be reversed because there was insufficient evidence to disprove his claim of self-defense. We disagree.

A.

In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution. State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (block quote format and citation omitted).

> Substantial evidence is "evidence which a reasonable mind might accept as adequate to support the conclusion of the fact finder." Matters related to the credibility of witnesses and the weight to be given to the evidence are generally left to the factfinder. The appellate court will neither reconcile conflicting evidence nor interfere with the decision of the trier of fact based on the witnesses' credibility or the weight of the evidence.

State v. Mitchell, 94 Hawai'i 388, 393, 15 P.3d 314, 319 (App. 2000) (citations omitted). We give "full play to the right of the fact finder to determine credibility, weigh the evidence, and

---

[3] Felix was not called as a witness at trial.

4

draw justifiable inferences of fact." State v. Yabusaki, 58 Haw. 404, 411, 570 P.2d 844, 848 (1977) (block quote format and citation omitted).

The justification defense of use of force in self-protection (self-defense) is set forth in HRS § 703-304 (1993 & Supp. 2012), which provides in pertinent part:

> (1) . . . the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
>
> . . . .
>
> (3) . . . a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used without retreating, surrendering possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action.

In evaluating a defendant's claim of self-defense, "the evidence must be assessed from the standpoint of a reasonable person in the defendant's position under the circumstances as the defendant subjectively believed them to be at the time he or she tried to defend himself or herself." State v. Lubong, 77 Hawai'i 429, 433, 886 P.2d 766, 770 (App. 1994). The test for self-defense contains both a subjective and an objective prong. "Under the subjective prong the jury is required to evaluate the use of force from the defendant's perspective. . . . [T]he focus is on the circumstances known to the defendant, thus directing the jury to consider the actions of a 'reasonable person in the defendant's position under the circumstances as he believed them to be.'" State v. Pond, 118 Hawai'i 452, 491, 193 P.3d 368, 407 (2008) (brackets, emphasis, and citation omitted). "Under the objective prong, emphasis is placed on the reasonable person standard so the defendant's use of force must be 'determined from the point of view of a reasonable person.'" Id. (brackets and citation omitted.

5

B.

Defendant argues that because his version of the events supported his claim of self-defense and because Jasfer's testimony was not credible, there was insufficient evidence to disprove Defendant's claim of self-defense. Defendant's argument lacks merit.

The prosecution disproves a defendant's claim of self-defense beyond a reasonable doubt when the trier of fact "believes the prosecution's case and disbelieves the defendant's case." State v. Jhun, 83 Hawai'i 472, 483, 927 P.2d 1355, 1366 (1996); In re Doe, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005); see State v. Pavao, 81 Hawaii 142, 146, 913 P.2d 553, 557 (App. 1996). Because "the jury must determine whether the defendant did in fact subjectively believe the use of force was necessary[,]" "[a] defendant's credibility . . . is at the crux of [the justification defense of self-defense]." State v. Lealo, 126 Hawai'i 460, 470, 272 P.3d 1227, 1237 (2012).

Defendant's argument on appeal overlooks the applicable standard of review, which requires this court to view the evidence in the light most favorable to the State and give deference to the jury's credibility determinations. We conclude that there was substantial evidence to support the jury's rejection of Defendant's claim of self-defense.

When viewed in the light most favorable to the State, the evidence showed that Defendant attacked Jasfer by grabbing him by the throat and pushing him backwards into a table; that from a close distance, Defendant swung a machete at Jasfer and that Defendant threatened to kill Jasfer and Felix and chop off their heads, while brandishing the machete and knives; and that Jasfer held a hammer at both ends in a defensive position. Defendant's testimony -- which did not acknowledge his possession of a machete and asserted that he did not threaten either Jasfer or his father with a knife, and that he only picked up the knife to defend himself after Jasfer picked up a hammer -- was contrary to Jasfer's and Amodo's testimony. In addition, Defendant's

6

testimony that Amodo could not have observed the incident was contradicted by Amodo. Defendant's testimony that Jasfer hit him on the shoulder with a hammer conflicted with the testimony of Officer Thomas Lodgeman, who responded to the scene and did not see any visible injury to that area of Defendant's body.

The jury was entitled to resolve the conflicting evidence by disbelieving Defendant's testimony that his actions against Jasfer were in self-defense. There was substantial evidence that Defendant did not subjectively believe that his use of force was necessary and also that Defendant's use of force was not objectively reasonable. Accordingly, we conclude that there was sufficient evidence to disprove the Defendant's claim of self-defense.

## II.

Defendant argues that his conviction should be vacated because comments by the prosecutor during closing argument constituted prosecutorial misconduct. In particular, Defendant contends that the prosecutor's comment that "committing a crime in anger is not a defense to crime" and the prosecutor's comparing the charged terroristic threatening offenses to other crimes was improper. We disagree.

## A.

During his closing argument, the prosecutor discussed the elements and mental state necessary to prove the charged offense of first-degree terroristic threatening. With respect to the charge involving Jasfer, the prosecutor argued that the State had proven the required mental state as follows:

> Did defendant recklessly disregard the risk of terrorizing Jasfer Madela?
>
> Now, this is important here. Recklessly disregard the risk. He didn't have to intend it. If he was just, like, upset, grabbed this knife in the heat of passion, said, I'm going to kill you, chop off your head, like that, did he recklessly disregard the risk that his conduct would cause someone fear? Yes, he recklessly did.
>
> He didn't have to intend to scare the person, but did he recklessly disregard the risk that he would do so? Yes.

7

> He grabbed the knives, machete. He held the machete and pointed it at Jasfer.
>
> He said he was going to kill them both. He said he was going to cut off their heads.
>
> He was standing near him when he said it. He did not accidentally terrorize him. Jasfer was actually terrorized.
>
> The police who spoke to him saw this. Officer Furoyama said [Jasfer] was shaken with fear.
>
> You don't need this, you don't need the actual fear, though, but in this case we actually got the fear.

After making a similar argument regarding proof of the required mental state with respect to the charge involving Felix, the prosecutor made the following comments, which include the comments challenged by Defendant on appeal:

> Under the law, it does not matter that he was angry. During jury selection, [defense counsel] started talking about heat of passion.
>
> Heat of passion, heat of passion. Under the law, it does not matter if [Defendant] was angry in the heat of passion when he did this. Committing a crime in anger is not a defense.
>
> Think about it, common sense of this here. Committing a crime in anger is not a defense to a crime. I'm sure that when you get the domestic violence cases going on, and someone's pounding on the other like that, someone's angry, that's not a defense to domestic violence.
>
> When someone kills someone, murder, kind of like that, they might be angry at that person. That's not a defense to murder.
>
> When someone's assaulting someone like that, anger is not a defense to a crime. It's a motivation for a crime, but not a defense to a crime.

### B.

"Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." State v. McGriff, 76 Hawaiʻi 148, 158, 871 P.2d 782, 792 (1994). In determining whether the alleged prosecutorial misconduct warrants a new trial, the appellate court considers "the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or

weakness of the evidence against defendant." State v. Agrabante, 73 Haw. 179, 198, 830 P.2d 492, 502 (1992).

In this case, Defendant did not object to the prosecutorial comments he now claims were improper on appeal. As a general rule, the failure to object at trial may be deemed to constitute a waiver of the issue on appeal. State v. Metcalfe, 129 Hawaiʻi 206, 224, 297 P.3d 1062, 1080 (2013); see People v. Hryshko, 427 N.W.2d 572, 578 (Mich. Ct. App. 1988) ("Absent objection, appellate review [of a prosecutor's remarks during closing argument] is foreclosed unless the prejudicial effect was so great that it could not have been cured by an appropriate instruction and failure to consider the issue would result in a miscarriage of justice."); Finnegan v. State, 764 N.W.2d 856, 863 (Minn. Ct. App. 2009) ("Failure to object to [the prosecutor's comments in closing argument] or to seek a curative instruction weighs heavily against reversal, because the [trial] court might have been able to ameliorate the effect of improper prosecutorial argument." (internal quotation marks, brackets, and citation omitted)).

However, even in the absence of an objection,

> an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant."
>
> The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." An appellate court's "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system -- that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes."

Metcalfe, 129 Hawaiʻi at 222, 297 P.3d at 1978 (citations omitted).

## C.

Defendant argues that the prosecutor's statement that "committing a crime in anger is not a defense" was improper. Defendant characterizes the prosecutor's comment as a

misstatement of law and contends that it may have misled the jury into believing that Defendant's defense of self-defense did not apply if he was angry.  Defendant's arguments are without merit.

The fact that Defendant was angry would not constitute a defense to the charged first-degree terroristic threatening offenses, and therefore, the prosecutor's comment was not a misstatement of law.  Moreover, the link that Defendant attempts to draw between the prosecutor's comment and misleading the jury into believing that anger precluded reliance on self-defense is tenuous and unconvincing.  The prosecutor was not discussing Defendant's self-defense claim when he made the challenged comment.  Indeed, later in his closing argument, the prosecutor argued that "[s]elf-defense . . . doesn't apply in this case because [Defendant] had the weapon first."  In addition, the jury was instructed on the requirements for self-defense, Defendant does not challenge the validity of the self-defense instruction, and Defendant's counsel used the self-defense instruction to argue that the prosecution had failed to disprove the defense in his closing argument.  We conclude that the prosecutor did not engage in misconduct in arguing that "committing a crime in anger is not a defense."

We also reject Defendant's claim that the prosecutor's reference to crimes involving domestic violence, assault, and murder were improper because "they were designed to inflame the passions of the jury by implying that [Defendant's] actions were comparative to domestic violence, assault or murder."  Viewed in context, the prosecutor's reference to domestic violence, assault, and murder was clearly not designed to inflame the passions of the jury.  The prosecutor was not equating Defendant's charged conduct with these offenses,[4] but was simply using them by analogy to argue that while anger often serves as a motivation for criminal conduct, it does not excuse criminal

---

[4] Indeed, the prosecutor told the jury, "This is not an assault crime. You're not here for an assault.  You're not here for a murder case."

conduct. We conclude that the prosecutor's reference to domestic violence, assault, and murder did not serve to improperly inflame the passions of the jury and did not constitute misconduct. See Commonwealth v. Silva, 447 N.E.2d 646, 655 (Mass. Sup. Jud. Ct. 1983) ("[I]t is proper for counsel to use analogy, example and hypothesis as an aid to effective and aggressive argument." (internal quotation marks and citation omitted)).

Because we conclude that the prosecutor's comments were not improper, we need not consider whether they affected Defendant's substantial rights. See State v. Maluia, 107 Hawai'i 20, 26, 108 P.3d 974, 980 (2005); State v. Valdivia, 95 Hawai'i 465, 482-83, 24 P.3d 661, 678-69 (2001). In any event, viewing the prosecutor's comments in context, we conclude that any error in the prosecutor's comments did not affect Defendant's substantial rights or deprive him of a fair trial. See McGriff, 76 Hawai'i 148, 158, 871 P.2d 782, 792 (1994); State v. Kupihea, 80 Hawai'i 307, 317, 909 P.2d 1122, 1132 (1996) (concluding that the prosecutor's use of hypothetical examples to illustrate a legal principle was not prejudicial); State v. Ture, 353 N.W.2d 502, 516 (Minn. 1984) ("The fact that defendant failed to object to the prosecutor's statements suggests [defendant] then did not consider them prejudicial.").

CONCLUSION

We affirm the Judgment of the Circuit Court.

DATED: Honolulu, Hawai'i, May 29, 2013.

On the briefs:

Kevin A. Souza
(Law Offices of
Kevin A. Souza, LLLC)
for Defendant-Appellant

Brandon H. Ito
Deputy Prosecuting Attorney
City & County of Honolulu
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge

11